UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN D. WILSON,

               Plaintiff,               CIVIL ACTION NO. 17-cv-11498

        v.                      DISTRICT JUDGE LINDA V. PARKER

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

               Defendant.
_____/

REPORT AND RECOMMENDATION

      Plaintiff Dawn Wilson seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 18).  Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment.  (Docket no. 20.)   The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

      For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 18) be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits in July 2010, alleging that she has been disabled since July 1, 2004, due to fibromyalgia; pain in her mid-back, neck, hands, and feet; a broad-based disc bulge at L4-L5 with bilateral narrowing; and spinal degenerative changes with hypertrophy.  (TR 173-79, 216, 220, 253.)  The Social Security Administration denied Plaintiff's claims on March 8, 2011, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 55-64, 96-97.)  On January 6, 2012, Plaintiff appeared with a representative and testified at a hearing before ALJ John Dodson.  (TR 40-54.)   The ALJ subsequently issued an unfavorable decision on February 21, 2012.  (TR 68-73.)  The Appeals Council reviewed and vacated ALJ Dodson's decision on the bases that he did not evaluate the treating source opinions; his finding regarding Plaintiff's residual functional capacity (RFC) for hand usage was unclear; and his finding that Plaintiff could perform her past relevant work as a tax preparer was not supported by substantial evidence.  (TR 78-79.)  The Appeals Council therefore remanded Plaintiff's case to an ALJ for resolution of those issues; specifically, with instructions to give further consideration to Plaintiff's maximum RFC, and in so doing, to evaluate the treating source opinions in accordance with the Social Security Administration's regulations and rulings; further evaluate Plaintiff's past relevant work and whether she can perform it; and if warranted, obtain supplemental evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on Plaintiff's occupational base.  (TR 78, 79-80.)

On remand, Plaintiff appeared with a representative and testified at a second hearing before ALJ Dodson on December 4, 2013.  (TR 21-39.)  ALJ Dodson issued another unfavorable decision on January 17, 2014, and the Appeals Council declined to review the decision.  (TR 1-5,

11-16.)  Plaintiff then commenced an action for judicial review on July 15, 2015, *Wilson v. Colvin*, No. 15-cv-12510 (E.D. Mich. 2015), which the parties stipulated to remand for further administrative action.  (TR 691-92, 695-98.)  On September 28, 2015, District Judge Arthur J. Tarnow entered an Order Remanding the Case under Sentence Four per the Parties' Stipulation. (TR 693-94.)  On remand, Judge Tarnow ordered the Commissioner to "reconsider Dr. Harris's opinion at Exhibit 3F, Dr. Sakiorion's opinion at Exhibit 10F, and Dr. Sekaran's opinion at 12F in accordance with 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p; and offer Plaintiff the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision."[1]  (TR 693.)  The Appeals Council then issued an order in furtherance of the court's order, vacating ALJ Dodson's January 17, 2014 decision and remanding the case to a different ALJ to give further consideration to Dr. Harris's and Dr. Sekaran's opinions, give further consideration to Plaintiff's maximum RFC, and, if necessary, obtain supplemental evidence from a VE.  (TR 699-704.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Melody Paige, on June 7, 2016.  (TR 653-90.)  ALJ Paige held another hearing on October 18, 2016, at which two medical experts and a VE testified regarding Plaintiff's claim for disability. (TR 609-52.)  On January 6, 2017, ALJ Paige issued an unfavorable final decision with regard to Plaintiff's claim.[2]  (TR 596-602.)  Plaintiff then commenced the instant action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

---

[1] The opinions at 10F and 12F are both Dr. Sekaran's opinions.  Defendant explains that Plaintiff's previous counsel described one of Dr. Sekaran's opinions as being from "Dr. Jay Sakiorion," which led to a similar error in the parties' stipulation to remand and the court's remand order.  (Docket no. 18 at 10 n.3.)

[2] "[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand . . . unless the Appeals Council assumes jurisdiction of the case."  20 C.F.R. § 404.984(a).  The Appeals Council did not assume jurisdiction following the issuance of ALJ Paige's decision.  (*See* docket no. 15 at 5.)

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff set forth a detailed, factual summary of her medical record and the hearing testimony in her brief.  (Docket no. 15 at 5-15.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's recitation of the record and the record itself. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate Plaintiff's factual recitation by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of July 1, 2004 through the date last insured of March 31, 2011.  (TR 598.)  Next, the ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia, facet arthropathy, and carpal tunnel syndrome.   (TR 599.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 600.)  The ALJ then found that, through the date last insured, Plaintiff had the following RFC:

> Claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with a sit/stand option, no lifting over five pounds, no repetitive twisting with the hands bilaterally, and no concentrated exposure to extreme temperatures.

(TR 600-01.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 601-02.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from July 1, 2004, through the date last insured of March 31, 2011.  (TR 597, 602.)

# V.   LAW AND ANALYSIS

## A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.   *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.   *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.   *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").   "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

5

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.      **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits or for further proceedings because: (1) "[t]he ALJ inappropriately incorporated the first two decisions by reference, despite their having been vacated and despite their embodiment of different findings, and applied an improper standard defaulting to the conclusions of the prior ALJ;" (2) "[t]he ALJ failed to properly evaluate the opinion of Dr. Sekaran, [Plaintiff's] treating physician;" (3) "[t]he ALJ did not properly evaluate [Plaintiff's] subjective complaints and credibility;" and (4) "[t]he Commissioner failed to sustain her burden of establishing that there is other work in the national economy that [Plaintiff] can perform." (Docket no. 15 at 1-2, 15-24.)

  1.  *The ALJ's Incorporation of the Two Prior ALJ Decisions by Reference*
     *and the Standard Applied by the ALJ on Remand*

  Plaintiff argues that ALJ Paige "inappropriately incorporated by reference the erroneous, vacated first two decisions" issued by ALJ Dodson. (Docket no. 15 at 15.) She also argues that ALJ Paige applied the improper standard on remand by deferring to ALJ Dodson's findings and the testimony of the medical expert, Dr. Rivero, rather than considering the case independently and issuing a new decision as required. (*Id.*)

  Under the Social Security Administration's regulations:

> When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision. If the case is remanded by the Appeals Council, the procedures explained in § 404.977 will be followed. Any issues relating to [a] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in [the] case.

20 C.F.R. § 404.983.

  Here, following remand by Judge Tarnow, the Appeals Council remanded the case to ALJ Paige. Thus, under § 404.983, ALJ Paige was required to follow the procedure set forth in § 404.977, which provides that on remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). As stated above, the Appeals Council's October 30, 2015 Order instructed the ALJ on remand to give further consideration to Dr. Harris's and Dr. Sekaran's opinions, give further consideration to Plaintiff's maximum RFC, and, if necessary, obtain supplemental evidence from a VE. (TR 701-02.) The Appeals Council further instructed the ALJ to offer Plaintiff the opportunity for a new hearing,

take any further action need to complete the administrative record, and issue a new decision. (TR 703.)

Plaintiff does not develop any argument regarding whether ALJ Paige complied with the regulations upon remand by taking all of the actions explicitly ordered by the Appeals Council; rather Plaintiff asserts that the ALJ committed other procedural errors in formulating her decision that warrant reversal, like incorporating the two previous ALJ decisions. (Docket no. 15 at 15-16; docket no. 20 at 2-4.) Indeed, in her decision, ALJ Paige took notice of the previous decisions rendered by ALJ Dodson and incorporated them by reference. (TR 596.) Also, in discussing the medical opinion evidence, the ALJ suggested that the previous decisions be referenced for a discussion of the pertinent medical exhibits. (TR 600.) Plaintiff admits that the practice of incorporating by reference certain findings from previously-vacated decisions is not necessarily improper on remand. (Docket no. 15 at 15 (citing *Wilson v. Comm'r of Soc. Sec. Admin.*, No. 3:15-cv-00691-HZ, 2016 WL 1598867, at *5 (D. Ore. Apr. 20, 2016)).) Nevertheless, Plaintiff argues that the ALJ committed reversible error in this case because she "incorporated wholesale" the two prior decisions, even though they were vacated as erroneous and contain inconsistent findings. (Docket no. 15 at 15-16.)

Plaintiff does not present any binding authority to support the proposition that an ALJ's incorporation by reference of a vacated opinion in its entirety is inherently erroneous, or that it was erroneous in this case. Instead, Plaintiff relies on the decision of another court in this circuit, *Spence v. Colvin*, No. 3:11cv00341, 2013 WL 5492637 (S.D. Ohio Oct. 2, 2013), *report and recommendation adopted*, No. 3:11cv00341, 2013 WL 5806474 (S.D. Ohio Oct. 29, 2013). *Spence* involved a situation in which the ALJ incorporated his first decision by reference in contradiction of the court's previous remand order. Specifically, despite the court's previous

9

finding that the ALJ improperly assessed the claimant's fibromyalgia in the first decision because the ALJ "appear[ed] to miss the fact that fibromyalgia is *not* a medical condition which is demonstrable by objective findings," the ALJ, "nonetheless 'incorporated by reference' the same unsupported findings from his first decision," including his "apparent and mistaken belief that the existence of fibromyalgia is shown by objective medical evidence" and "arrived at the same flawed conclusion that the medical evidence lacks objective findings." *Id*. at *15. The ALJ also explicitly discounted the opinion of the claimant's treating physician "for the reasons discussed in the prior unfavorable decision" despite the court's specific finding that the ALJ's decision to provide that particular opinion little weight was not supported by substantial evidence. *Id*. at *16. Accordingly, the court found that the ALJ's incorporation by reference of his first decision – that had been determined by the court to be erroneous and not supported by substantial evidence – constituted reversible error. *Id*. at *15-16.

Plaintiff's case is distinguishable, as Judge Tarnow's remand order did not address or invalidate the analysis or findings in ALJ Dodson's January 17, 2014 decision on the merits; the order simply remanded the matter for further consideration of the medical opinion evidence. (*See* TR 691-94.) Indeed, neither the court's remand order nor the Appeals Council's remand orders found that the analysis or findings in ALJ Dodson's decisions that are relevant to Plaintiff's instant appeal were substantively erroneous;[3] the orders stated (explicitly and implicitly), in relevant part, that ALJ Dodson's analysis of the medical opinion evidence was inadequate. (*See* TR 77-81, 691-94, 699-704.) Accordingly, unlike the ALJ's incorporation by

---

[3] The undersigned acknowledges that the Appeals Council's June 21, 2013 Order found that ALJ Dodson's determination that Plaintiff was capable of performing her past relevant work was not supported by substantial evidence (TR 79), but that issue appears to have been resolved through ALJ Dodson's second decision and is not relevant to Plaintiff's appeal of ALJ Paige's decision.

reference of his previous decision in *Spence*, ALJ Paige's incorporation of ALJ Dodson's prior decisions by reference does not constitute reversible error.

Plaintiff also argues that ALJ Paige applied an improper standard in her decision by deferring to ALJ Dodson's January 17, 2014 RFC determination.  (Docket no. 15 at 16-17.) Plaintiff bases this argument on ALJ Paige's statement in her decision that "[t]he medical expert testimony provides no basis for changing the claimant's residual functional capacity for limited sedentary exertional work by March 31, 2011, as described in the ALJ decision from January 2014."  (*Id.* at 16 (citing TR 600).)  ALJ Paige also concluded in her decision that "[o]verall, no exhibits or testimony has been presented which would persuade the undersigned to change the claimant's residual functional capacity for some sedentary work, consistent with the earlier decision."  (TR 601.)  Plaintiff interprets these two statements made by ALJ Paige to mean that she "defaulted" or "deferred" to ALJ Dodson's RFC determination or that she otherwise "presumed that it was correct."  (Docket no. 15 at 16-17.)

The ALJ's above-cited statements do not explicitly state such a deference to ALJ Dodson's January 17, 2014 RFC determination, but Plaintiff's interpretation thereof is not unreasonable, especially when considered in conjunction with the fact that ALJ Paige's RFC determination is identical to ALJ Dodson's RFC determination.  Nevertheless, as Defendant argues, ALJ Paige's "mere agreement" with ALJ Dodson's RFC determination "does not equal a presumption that it was correct."  (*See* docket no. 18 at 12.)  Moreover, Plaintiff's assumptions in this regard are circumstantial, and Defendant has cited direct evidence to the contrary. Specifically, Defendant points out that the ALJ explicitly stated on the record at the June 7, 2016 hearing that the previous decisions that found a less than sedentary RFC were not final, that she was "certainly . . . not bound by those [decisions]," and that she may have a different opinion.

(Docket no. 18 at 12 (citing TR 660).)  Furthermore, while only final administrative decisions are entitled to deference, *see Hollins v. Apfel*, 160 F. Supp. 2d 834, 840 (S.D. Ohio 2001), *aff'd sub nom. Hollins v. Massanari*, 49 F. App'x 533 (6th Cir. 2002) (citing *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837, 841 (6th Cir. 1997); *Dennard v. Sec'y of Health and Human Servs.,* 907 F.2d 598 (6th Cir. 1990)), Plaintiff cites no authority that prohibits an ALJ from considering, referring to, or even giving deference to findings in a non-final, vacated decision that were not found to be erroneous on their merits.  Accordingly, Plaintiff's argument in this regard is unavailing.

Plaintiff also cites no authority to support her argument that the ALJ committed reversible error by eliciting and relying upon the testimony of medical expert Dr. Rivero in assessing the medical opinion evidence; nor does she demonstrate that the ALJ's actions in this regard were inconsistent with the remand orders.  (*See* docket no. 15 at 16-17.)  Conversely, Social Security Ruling (SSR) 96-2p provides that "in cases at the administrative law judge (ALJ) or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record."  SSR 96-2P, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).  Notably, the Appeals Council's October 30, 2015 remand order instructs the ALJ to give further consideration to the medical opinion evidence in accordance with SSR 96-2p.  (TR 702.)  It is also worthy to note that Plaintiff did not object to the ALJ's use of a medical expert to evaluate the medical opinion evidence at the hearing.  (TR 660.)  Plaintiff's argument fails with respect to this issue.

2. *The ALJ's Assessment of Dr. Sekaran's Opinion*

Plaintiff argues that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Sekaran.  (Docket no. 15 at 17-21; docket no. 20 at 4-6.)  It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. Sekaran purportedly completed two medical assessments regarding Plaintiff's ability to do physical work-related activities. (TR 470-73, 589-92.) The first assessment has a date stamp of December 15, 2011 and was submitted to Social Security Administration ALJ Timothy Scallen on January 9, 2012, but it is not signed or dated by Dr. Sekaran. The second assessment is signed by Dr. Sekaran and dated December 2, 2013. In the substantially similar assessments, Dr. Sekaran indicated that he had been treating Plaintiff since October of 2010 and that Plaintiff has diagnoses of fibromyalgia, chronic low back pain/facet arthropathy, and bilateral carpal tunnel syndrome. Dr. Sekaran opined that Plaintiff's prognosis was fair, and that Plaintiff could occasionally carry 10 pounds, but only 6 pounds frequently; could sit for a total of 3 hours in a

regular 8-hour day; would need to take unscheduled breaks of a half-hour duration every 40 minutes; had significant limitations with reaching, handling, or fingering; would likely be absent from work more than 4 days per month; and could rarely stoop, bend, crouch/squat, or climb ladders; among other things.

The ALJ discussed and assessed the medical opinion evidence, including that from Dr. Sekaran, as follows:

> Dr. Rivero testified that the residual functional capacity assessment from T. Harris, M.D.,[4] in August 2010, limiting the claimant to lifting only three to five pounds, standing and walking for one to two hours, and sitting for one to two hours over an eight hour workday, was not supported by the evidence by the time that she was last covered for benefits (Exhibit 3F). The doctor referred to a consultative examination from November 2011, which documents that claimant was riding her bicycle two miles a day and walking with a stable gait, unassisted (Exhibit 8F). The medical expert reviewed the rest of the record and noted that she subsequently developed tendonitis in her right shoulder, bursitis in her left hip, and a ganglion cyst in her right hand (Exhibit 11F). The doctor opined that all of her impairments in combination medically equaled Listing 14.09 on inflammatory arthritis around October 2012, but this was already a year and a half after her insured status had expired. Dr. Rivero further commented that the residual functional capacity assessment from J. Sekaran, M.D., was not signed and dated until December 2013, but reiterated that any assessment disabling the claimant by March 2011 was not adequately corroborated by the record (Exhibits 10F, 12F).
>
> . . . .
>
> The medical expert testimony provides no basis for changing the claimant's residual functional capacity for limited sedentary exertional work by March 31, 2011, as described in the ALJ decision from January 2014 (Exhibit 8A). Dr. Rivero testified that the residual functional capacity assessments from Dr. Harris and Dr. Sekaran, which appear to vocationally disable her by this date, are not supported by clinical and objective evidence. The doctor reported that the claimant developed more physical ailments after her insured status had expired but that her overall condition was not of Listing severity until around October 2012, well after the end of her Title II coverage. Furthermore, the assessment from Dr. Sekaran was not signed and dated until December 2013. Hence, the undersigned will give no weight to this doctor's conclusions before December 2013. The earlier ALJ decisions from February 2012 and January 2014 already

---

[4] Plaintiff does not challenge the ALJ's assessment of Dr. Harris's opinion.

postdate the date that she was last insured, and they should be referenced for a discussion of the pertinent medical exhibits.

(TR 599, 600.)

Plaintiff argues that the ALJ erred by uncritically accepting Dr. Rivero's conclusions because they are based on an assumption that the medical opinion evidence must be corroborated by detailed contemporaneous treatment notes that describe the functional limitations, and such an assumption is mistaken as a matter of law.  (Docket no. 15 at 19 (citing *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014)).)  But Dr. Rivero's testimony does not reveal such a stark assumption.  Dr. Rivero testified that Plaintiff experienced a decrease in function that would have supported the medical opinions putting Plaintiff at a less than sedentary RFC, but the treatment notes documenting the decrease in function show that it started in October 2012.  (TR 617-18.)  Dr. Rivero also testified that there weren't real good notes documenting Plaintiff's functioning prior to 2012 that supported the functional restrictions assessed in the medical opinion evidence.  (TR 620.)  Dr. Rivero then pointed out that the record includes the results of a November 2011 consultative examination at which Plaintiff said that she was biking two miles a day, could drive, had a normal gait, and the exam was basically normal.  (TR 620.)  Dr. Rivero opined that "that would tend to contradict the notion that [Plaintiff] couldn't do sedentary work."  (TR 620.)  Essentially, Dr. Rivero testified that the medical opinions were not well-supported and that they were inconsistent with the evidence, which speaks to the heart of the treating physician rule.  *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994) (The opinions of treating physicians "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence.")  The ALJ did not error by relying on Dr. Rivero's testimony.

Plaintiff also argues that the ALJ erred by assigning "no weight" to Dr. Sekaran's opinions on the basis that they were not signed and dated until December 2013. (Docket no. 15 at 20.) The Sixth Circuit has recently held, however, that an ALJ does not commit reversible error by failing to evaluate a medical opinion prepared after a claimant's insured status has expired, because the opinion is not relevant to the claimant's condition during the insured period. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016), *reh'g denied* (Sept. 13, 2016) (citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("[E]vidence of disability obtained after the expiration of insured status is generally of little probative value.")). Indeed, as Plaintiff's argues, evidence dated and/or submitted after the date last insured should still be considered to the extent that it illuminates a claimant's medical condition during the alleged period of disability. (*See* docket no. 15 at 20 (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985)))).) But here, Dr. Sekaran authored the opinions at issue purportedly sometime in December 2011 and on December 2, 2013, some months and years after Plaintiff's date last insured of March 31, 2011, and there is no indication that the opinions relate to Plaintiff's condition during the period of alleged disability, July 1, 2004 to March 31, 2011. Accordingly, Dr. Sekaran's opinions are not apparently relevant to the instant matter, and the ALJ did not err by according them no weight. Plaintiff's Motion for Summary Judgment should therefore be denied with regard to the ALJ's assessment of Dr. Sekaran's opinions.

### 3. The ALJ's Assessment of Plaintiff's Subjective Complaints

Next, Plaintiff argues that the ALJ did not properly evaluate her subjective complaints and credibility. (Docket no. 15 at 21-23; docket no. 20 at 6.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an

17

ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).   But these assessments are not insulated from judicial review.   Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.*   An ALJ's evaluation of an individual's symptoms must contain "specific reasons . . . be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."   SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at * 9 (S.S.A. Mar. 16, 2016).   "It is not sufficient . . . to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."   20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).   The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In this case, the ALJ considered and discussed Plaintiff's hearing testimony and her other

subjective complaints in conjunction with the record evidence, and the ALJ found that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her symptoms were "not

entirely consistent with the medical evidence."   (TR 599, 600.)   The ALJ then provided the

following discussion:

> The claimant's testimony of back and hand problems prior to March 2011 leading
> to crippling pain throughout her body was not corroborated by the record or the
> medical expert testimony, and her argument of drowsy side effects from her
> medications is also not substantiated by the close of her coverage.   According to
> Dr. Rivero, she developed multiple musculoskeletal deficits subsequent to March
> 2011, and her condition did not medically equal Listing criteria on inflammatory
> arthritis until October 2012.   Claimant admitted that she was able to sit for a while
> and her alleged depression was not supported by Dr. Wargel's testimony to the
> extent that it was incapacitating by the date last insured.   The doctor maintained
> that her adjustment disorder resulted in merely mild limitations with respect to the
> "B" criteria, and that she was quite capable of making occupational adjustments.
> The undersigned is accordingly satisfied that the claimant's psychiatric status was
> not "severe" within the meaning of the Social Security Act, by the time her
> insured period concluded.   Overall, no exhibits or testimony has been presented
> which would persuade the undersigned to change the claimant's residual
> functional capacity for some sedentary work, consistent with the earlier decision.

(TR 601.)

Plaintiff argues that the ALJ's determination that Plaintiff's testimony of her back and

hand problems leading to crippling pain was "not corroborated by the record" is "exceedingly

vague."  (Docket no. 15 at 21.)  As determined above, however, the ALJ properly incorporated

the previous decisions by reference, and when read in conjunction with ALJ Dodson's summary

of the objective medical evidence (TR 71) and ALJ Dodson's discussion of Plaintiff's back and

hand discomfort (TR 14-15), ALJ Paige's assertion is clear and logical.

Plaintiff also argues that "the ALJ's reference to a lack of corroboration seems to invoke

a lack of objective medical evidence, when in fact much of [Plaintiff's] pain and fatigue stems

from her severe fibromyalgia." (Docket no. 15 at 21-22.) But the ALJ's decision in this regard explicitly focuses on Plaintiff's back and hand problems, not her fibromyalgia.

Plaintiff further argues that the ALJ's determination that Plaintiff's statements regarding drowsy side effects from her medications are not substantiated is erroneous. Plaintiff's argument here holds merit, as she points to record evidence from the alleged period of disability that documents those side effects. (*See* docket no. 15 at 23 (citing TR 353, 365, 375).) Nevertheless, in light of the several sound reasons given by the ALJ for discounting Plaintiff's subjective complaints, this error does not warrant remand.

Lastly, Plaintiff argues that the ALJ's emphasis on Plaintiff's admission that she was able to sit for a while "clearly does not support a capacity for full-time work." (Docket no. 15 at 23.) The ALJ, however, did not equate Plaintiff's ability to sit for a while with an ability to perform full-time work. As Defendant argues, the ALJ pointed to Plaintiff's ability to sit for a while as one of the several pieces of evidence that discredited Plaintiff's subjective complaints and led her to determine that Plaintiff could perform some sedentary work. (*See* docket no. 18 at 21; TR 601.)

The above discussion demonstrates that ALJ Paige set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in her decision, some of which apply the factors set forth in 20 C.F.R. § 404.1529(c)(3) and are all properly supported by the record evidence in accordance with SSR 16-3p. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court how she evaluated Plaintiff's symptoms. The ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence and should not be disturbed.

4.      *The ALJ's Step-Five Determination*

Plaintiff argues that the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Plaintiff can perform.  (Docket no. 15 at 23-24.) Specifically, Plaintiff argues that the ALJ's RFC assessment cannot be sustained because the ALJ did not properly evaluate the medical opinion evidence, and therefore, the hypothetical questions posed to the VE were incapable of eliciting testimony sufficient to carry the Commissioner's burden at step five of the sequential evaluation process.  (*Id*. at 24.)  Because this argument hinges on the merits of Plaintiff's argument regarding the ALJ's assessment of Dr. Sekaran's opinions, which was rejected above, this argument also fails.

## VI.      CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 15) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 18).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).
Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern
District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the
opposing party may file a response. The response shall be not more than five (5) pages in length
unless by motion and order such page limit is extended by the Court. The response shall address
specifically, and in the same order raised, each issue contained within the objections.

Dated:  August 17, 2018          s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel
of record on this date.

Dated:  August 17, 2018          s/ Leanne Hosking
                                          Case Manager